UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHANNING BETE COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARK T. GREENBERG and PATHS® EDUCATION WORLDWIDE, LLC | ) |
| | ) |
| Defendants. | ) |
| | ) |
| MARK T. GREENBERG and PATHS® EDUCATION WORLDWIDE, LLC, | )   Case No. 3:19-cv-30032-MGM |
| | ) |
| Defendants and Third-Party Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| PATHS PROGRAM HOLDING, LLC (AZ), PATHS PROGRAM, LLC (AZ), LEARNINGSEL, LLC (AZ), PATHS PROGRAM HOLDING, LLC (MA), and LEARNINGSEL, LLC (NJ), | ) |
| | ) |
| Third-Party Defendants. | ) |

REPORT AND RECOMMENDATION REGARDING THIRD-PARTY
DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION
(Dkt. No. 74)

ROBERTSON, U.S.M.J.

I.  INTRODUCTION

The Third-Party Defendants, PATHS Program Holding, LLC (AZ), PATHS Program, LLC (AZ), LearningSEL, LLC (AZ), PATHS Program Holding, LLC (MA), and LearningSEL, LLC (NJ) (hereinafter collectively "PPH"), move preliminarily to enjoin PATHS® Education Worldwide, LLC ("PEW") from using or referring to PPH's PATHS® trademark ("Mark") in

1

association with PEW's business of training educators on the implementation of the Promoting Alternative Thinking Strategies ("PATHS®") curriculum. The motion has been referred to this court for a report and recommendation (Dkt. No. 111). *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). For the reasons set forth below, the undersigned recommends that the motion be DENIED.

## II. FACTUAL BACKGROUND

By 1993, Dr. Mark T. Greenberg and Dr. Carol Kusche had jointly developed a curriculum for the social and emotional development of children called the PATHS Program (Dkt. No. 30 ¶ 7). In about May 1993, Dr. Greenberg and Dr. Kusche granted Developmental Research and Programs, Inc. ("DRP") the exclusive license and distribution rights to the PATHS Program in exchange for royalties (Dkt. No. 30 ¶ 8). DRP registered the PATHS® curriculum trademark with the United States Patent and Trademark Office ("USPTO") in 1995 (Dkt. No. 30 ¶ 9).

On January 9, 2002, when DRP merged with Channing Bete Company ("CBC"), CBC obtained the exclusive license to publish and distribute the PATHS® Program and the exclusive rights to the PATHS® curriculum Mark (Dkt. No. 30 ¶¶ 11, 12, 13). Thereafter, CBC was not directly involved in training on the PATHS® Program, but teamed up with organizations that trained educators on its implementation (Dkt. No. 30 ¶ 24). PATHS® Training LLC, founded by Dr. Greenberg and Dr. Kusche in the late 1990s, provided PATHS® training (Dkt. No. 79-1 ¶¶ 3, 4). PEW, which Dorothy Morelli started as a non-profit corporation in 2013, also trained educators on the PATHS® Programs (Dkt. No. 30 ¶ 25; Dkt. No. 79-2 ¶¶ 3, 4). PEW was organized under Tennessee law and headquartered in Brentwood, Tennessee (Dkt. No. 30 ¶ 4; Dkt. No. 79-2 ¶ 3). It became a for-profit corporation in or about 2015 (Dkt. No. 30 ¶ 29).

In 2011, CBC applied to the USPTO to register the PATHS® Mark for "training services in the areas of youth social and emotional learning and development, bullying prevention, the prevention of behavioral problems, and the implementation of educational curricula addressing such areas" (Dkt. No. 79-7 at 1).  After January 8, 2013, when the USPTO registered CBC's PATHS® Mark for training services and implementation of the PATHS® curricula, CBC granted PEW a license to use the PATHS® "trademarks and service marks" (Dkt. No. 30 ¶ 147; Dkt. No. 88 ¶ 10; Dkt. No. 88-2).

In December 2018, PATHS Program Holding, LLC ("PPH MA") was incorporated in Massachusetts in anticipation of CBC's sale of certain intellectual property (Dkt. No. 88 ¶ 2). CBC assigned to PPH MA all rights to the PATHS® Mark that was registered with the USPTO for use with respect to the training services related to the PATHS® curricula (Dkt. No. 88 ¶¶ 2, 3).  On March 8, 2019, CBC notified PEW that its license to use the PATHS® "trademarks" for its training services would terminate on April 30, 2019 (Dkt. No. 77 ¶¶ 3, 4; Dkt. No. 77-1; Dkt. No. 88 ¶ 10).

Pew represents that, after CBC notified PEW of the termination of the license agreement, it "promptly" changed its name to "SEL Worldwide" with the Tennessee Secretary of State, acquired a new domain name, www.selworldwide.org, built a new website to remove non-nominative uses of the term "PATHS," and revised its marketing materials in a similar manner (Dkt. No. 79 at 4; Dkt. No. 79-2 ¶¶ 13, 16).  By a May 8, 2019 e-mail message from CBC's counsel to PEW's counsel, CBC demanded that PEW cease using the PATHS® Mark or CBC would request injunctive relief (Dkt. No. 77 ¶ 5).  On May 20, 2019, PEW's counsel responded that a request for an injunction was unnecessary because PEW had taken the following steps:

    1.    PEW has ceased trademark use of and agrees not to make any trademark use of or reference to the PATHS® mark other than nominative use.

3

2. PEW has adopted a fictitious name with the Tennessee Secretary of State called Education International to avoid use in commerce of the PATHS Education Worldwide name. PEW has pre-existing contracts in place that prohibit it from changing its legal name, but PEW will make all reasonable effort to change the legal name on its existing contracts and will not enter future contracts under the name PEW. The appropriate filing has been made with the Tennessee Secretary of State.

3. PEW certifies that it is not continuing to use, and will not use, the PATHS® mark in a trademark way other than nominative use.

4. PEW is not using the domain name www.pathseducation.com, currently does not intend to use it, and does not intend to transfer it to any party.

(Dkt. No. 77-3 at 2).

On or about May 30, 2019,[1] PPH MA sold and transferred its assets, including the PATHS® Programs and PATHS® curriculum and training Marks, to Anna-Lisa and Glen Mackey (Dkt. No. 30 ¶ 208; Dkt. No. 88 ¶ 3; Dkt. No. 89 ¶ 2).[2] Anna-Lisa is the managing

---

[1] There are discrepancies in CBC's and the Third-Parties' pleadings as to the date of the sale of PPH MA to the Mackeys. Anna-Lisa Mackey's Affidavit in Support of Motion for Preliminary Injunction indicates that the sale occurred on April 30, 2019 while her Second Affidavit in Support of the Motion for a Preliminary Injunction states that the transaction occurred on April 30, 2020 (*compare* Dkt. No. 76 ¶ 2 *with* Dkt. No. 89 ¶ 2). The Second Amended Complaint indicates that "[o]n or about May 30, 2019, CBC assigned to PATHS® Program Holding, LLC [PPH], the exclusive license of the publication and distribution rights regarding the PATHS® Program and Derivative Works" (Dkt. No. 30 ¶ 208). Michael Bete, the former President and CEO of CBC, stated that the sale occurred on May 30, 2019 (Dkt. No. 88 ¶ 3). In ruling on Dr. Greenberg's and PEW's motion to dismiss the second amended complaint, the presiding District Judge adopted "[o]n or about May 30, 2019" as the transfer date (Dkt. No. 33 at 1). For purposes of this report and recommendation, the undersigned will also use May 30, 2019 as the sale date.

[2] Because Anna-Lisa and Glen Mackey share their surname, they will be referred to by their first names to avoid confusion.

member of the PPH entities (Dkt. No. 76 ¶ 1).[3] Because PPH provides training services for the PATHS® Programs, it competes with PEW (Dkt. No. 89 ¶ 5).

### III. Procedural History

CBC filed suit against Dr. Greenberg and PEW on March 7, 2019 and filed a Second Amended Complaint on November 4, 2019 claiming that Dr. Greenberg and PEW tortiously interfered with CBC's business relations, infringed on CBC's trademark, and breached non-disclosure confidentiality agreements, that Dr. Greenberg breached a non-compete agreement and violated Mass. Gen. Laws ch. 93A, and that PEW breached its trademark license agreement with CBC (Dkt. No. 30). The presiding District Judge granted so much of Dr. Greenberg's and PEW's motion to dismiss the second amended complaint as alleged infringement claims premised on the behavior of Bernardo, a non-party group, and denied the motion as to all other claims (Dkt. No. 33 at 11). Dr. Greenberg and PEW have asserted counterclaims against CBC and, on May 13, 2020, PEW brought a third-party complaint against PPH (Dkt. Nos. 36, 37, 41). Dr. Greenberg filed an amended third-party complaint against PPH on June 25, 2020 (Dkt. No. 59).

On September 4, 2020, PPH moved for a preliminary injunction to enjoin PEW from making any unauthorized use of or reference to the PATHS® training Mark that was registered with the USPTO on January 8, 2013 (Dkt. No. 74). PPH further requested that the court order PEW to ". . . immediately change its name to remove any use of the Mark . . . ; . . . certify to the [c]ourt and to PPH that it is not continuing to use, and will not use, the Mark in any way

---

[3] According to Anna-Lisa, in December 2019, PPH MA changed its domicile from Massachusetts to Arizona and cancelled its domicile in Massachusetts, but, according to Anna-Lisa, PPH MA continued to exist in Massachusetts (Dkt. No. 89 ¶¶ 3, 4).

unauthorized; and . . . immediately transfer to PPH its right, title and interest to the domain name www.pathseducation.com" (Dkt. No. 74). [4]

## IV. LEGAL STANDARD

"'A preliminary injunction is an "extraordinary and drastic remedy"' that 'is never awarded as of right.'" *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,* 645 F.3d 26, 32 (1st Cir. 2011) (citations omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981). "To obtain a preliminary injunction, a [movant] must establish that (1) [it] is likely to succeed on the merits; (2) [it] is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) the injury [it] will incur if injunctive relief is not granted will outweigh the harm which granting the injunctive relief would inflict on defendants; and (4) public interest favors an injunction." *7-Eleven, Inc. v. Grewal*, 60 F. Supp. 3d 272, 279 (D. Mass. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)).

## V. ANALYSIS

PPH argues that it is entitled to enjoin PEW's use of the PATHS® training Mark because it is likely to succeed on its claim of trademark infringement, likely to suffer irreparable harm if the preliminary injunction is not granted and will incur harm that outweighs the harm to PEW if the court denies its request for injunctive relief. PPH further argues that it is in the public's interest to grant the injunction. PPH alleges the following events in support of its position: (1)

---

[4] Although CBC granted PEW a license to use the PATHS® "trademarks and service marks" in 2013, and asked PEW to "cease and desist any use of PATHS® trademarks" on April 30, 2019, PPH's motion is directed to the PATHS® training Mark and does not mention the PATHS® curriculum Mark, which was registered in 1995 (Dkt. No. 30 ¶ 9; Dkt. No. 74; Dkt. No. 77-1; Dkt. No. 88-2). Consequently, the court addresses PEW's alleged misuse of the PATHS® training Mark.

two of PEW's clients placed orders for PATHS® curriculum material from PPH that were addressed to PEW; (2) PEW re-registered its domain name, www.pathseducation.com; and (3) PEW used the name, "PATHS® Education Worldwide" on a grant application that it filed in partnership with the University of Virginia.  For the reasons that follow, in the court's view, PPH has failed to sustain its burden of demonstrating that it is entitled to injunctive relief.

    A.    <u>PPH is Not Likely to Succeed on the Merits of Its Trademark Infringement Claim</u>

A movant's likelihood of success on the merits is "'the most important part of the preliminary injunction assessment.'"  *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 7 (1st Cir. 2012) (quoting *Jean v. Mass. State Police,* 492 F.3d 24, 27 (1st Cir. 2007)).  To prevail on a trademark infringement claim under the Lanham Act, "a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion."  *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008).  For purposes of making its recommendation on PHH's motion for preliminary injunctive relief, this court assumes that the PATHS® Mark is valid and entitled to protection.

"The First Circuit has interpreted 'likely to cause consumer confusion' to mean 'more than the theoretical possibility of confusion.'"  *Smartling, Inc. v. Skawa Innovation Ltd.*, 358 F. Supp. 3d 124, 138 (D. Mass. 2019) (quoting *Boston Duck Tours, LP*, 531 F.3d at 12).  *See Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 9–10 (1st Cir. 2012) (same).

> Courts in this circuit consider the following non-exhaustive list of factors, known as the "*Pignons*" factors, when assessing the likelihood of confusion:  "(1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark."

7

*Smartling, Inc.*, 358 F. Supp. 3d at 138-39 *(quoting The Shell Co. (P.R.) Ltd. v. Los Fraìles Serv. Station, Inc.*, 605 F.3d 10, 22 & n.9 (1st Cir. 2010)).  *See Pignons S. A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981).  The inquiry is "highly fact-intensive."  *The Shell Co. (P.R.) Ltd.*, 605 F.3d at 22.

  PEW does not challenge PPH's assertions that the PATHS® Mark is strong and that the parties perform the same services, share similar channels of trade, advertising, and classes of prospective purchasers (Dkt. No. 79).  PEW asserts, however, that PPH has failed adequately to demonstrate consumer confusion and its intent to cause confusion.

    1.  Purchase orders that were addressed to PEW but delivered to PPH

  There is no dispute that, before April 30, 2019, there was a mutually beneficial relationship between CBC and PEW in that some clients hired PEW after they purchased curriculum materials from CBC and other clients purchased materials from CBC after being identified by PEW (Dkt. No. 30 ¶ 24; Dkt. No. 79-2 ¶¶ 5, 7, 8).  To demonstrate actual consumer confusion, PPH relies on two instances in which PEW's clients that had ordered PATHS® material from PEW in the past, the Seneca Nation of Indians ("Seneca Nation") and Anderson School District 5 ("Anderson"), placed orders for material with PPH that were addressed to PEW.  According to Anna-Lisa Mackey, PPH received a purchase order for online training from the Seneca Nation, which was dated September 11, 2019 and directed to PEW (Dkt. No. 76 ¶¶ 7, 8; Dkt. No. 76-1 at 2).  Anna-Lisa further attests that on May 13, 2020, PPH received an e-mail from Anderson that was sent to sales@pathsprogam.com (Dkt. No. 76 ¶¶ 7, 9).  The purchase order attached to the e-mail was directed to PEW, LLC, and SEL Worldwide in Bowling Green, Kentucky (Dkt. No. 76-2 at 3).

8

PEW's argument that Seneca and Anderson intended to order the PATHS® materials from PPH but made a mistake on the vendors' names and addresses on the purchase orders is plausible.  However, assuming, without deciding, that the Seneca Nation and Anderson were confused when they placed purchase orders that were addressed to PEW, the two instances that PPH asserts occurred during the approximately sixteen months between April 30, 2019, when CBC revoked PEW's license, and September 4, 2020, when PPH sought the preliminary injunction, are de minimus and are insufficient to demonstrate consumer confusion.  "[W]hile evidence of specific instances of actual confusion is certainly probative of the general likelihood of confusion between the marks, 'it does not follow that any type of quantum of such evidence is entitled to significant weight in the determination.'"  *Martha Elizabeth, Inc. v. Scripps Networks Interactive, LLC*, No. 1:10-cv-1244, 2011 WL 1750711, at *16 (W.D. Mich. May 9, 2011) (quoting *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1110 (6th Cir. 1991)).  "'When determining whether there exists a likelihood of confusion, weight is given to the number and extent of instances of actual confusion.'"  *Microware Sys. Corp. v. Apple Comput., Inc.*, 126 F. Supp. 2d 1207, 1215 (S.D. Iowa 2000), *aff'd,* 238 F.3d 989 (8th Cir. 2001) (quoting *Duluth News–Tribune, a Div. of Nw Publ'ns, Inc. v. Mesabi Publ'g Co.,* 84 F.3d 1093, 1098 (8th Cir. 1996)).  "[A]llegedly infringing conduct must create 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'"  *Boston Duck Tours, LP*, 531 F.3d at 12 (quoting *Int'l. Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996)).  See *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 674 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017) (same).  "[I]solated,

anecdotal instances of actual confusion may be *de minimis* and may be disregarded in the confusion analysis." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1150–51 (10th Cir. 2013).

By identifying two purchase orders addressed to PEW over some sixteen months, PPH has not borne its burden to show that "an appreciable number" of consumers were confused. *Boston Duck Tours LP,* 531 F.3d at 12. *See Beerntsen v. Beerntsen's Confectionary, Inc.*, No. 11-C-151, 2012 WL 1900108, at *5 (E.D. Wis. May 24, 2012) (plaintiff failed to show widespread confusion). "[T]here is no evidence that the confusion is anything more than [two] isolated vague misunderstandings." *Id.* "[C]onfusion resulting from the consuming public's carelessness, indifference, or ennui will not suffice" to establish consumer confusion. *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 124 (D. Mass. 1999), *aff'd,* 232 F.3d 1 (1st Cir. 2000) (quoting *Winship Green Nursing Ctr.,* 103 F.3d at 201) (citations omitted)). *See Water Pik, Inc.*, 726 F.3d at 1151 ("The four instances cited by Med–Systems are isolated episodes with minimal probative value on whether reasonable consumers as a whole are actually confused by Water Pik's trademark."); *Duluth News–Tribune,* 84 F.3d at 1098 (finding evidence of misdirected mail and phone calls "de minimis" demonstrating "inattentiveness on the part of the caller or sender rather than actual confusion"); *Microware Sys. Corp.*, 126 F. Supp. 2d at 1216 ("These two postings hardly demonstrate consumers confusion; and even if they were so construed, they are de minimis and otherwise show the writers' inattentiveness."); *Black Dog Tavern Co. v. Hall,* 823 F. Supp. 48, 56 (D. Mass. 1993) (two examples of consumer confusion over two years did not suffice to establish actual confusion). *Compare Chronicle Publ'g Co. v. Chronicle Publ'ns, Inc.,* 733 F. Supp. 1371, 1377–78 (N.D. Cal. 1989) ("Plaintiff has provided substantial evidence of actual confusion in the form of over 100 instances of customer confusion. These include book wholesalers requesting copies of defendant's publications from plaintiff,

retailers and wholesalers attempting to return unused copies of defendant's books to plaintiff, bills for defendant's advertising being sent to plaintiff and congratulations on defendant's sales figures being conveyed to plaintiff . . . . This constitutes substantial evidence of actual confusion and weighs heavily in favor of plaintiff"). In the court's view, the two purchase orders that PPH received fail to establish a likelihood of confusion and do not support PPH's request for a preliminary injunction.

2. PEW's continued use of its original domain name

As proof of PEW's intent to cause consumer confusion, PPH points to PEW's continued use and re-registration of its original domain name, www.pathseducation.com, which PPH alleges incorporates the PATHS® Mark (Dkt. No. 76 ¶ 12). Although PEW apparently retained its original domain name, it registered a new name after CBC terminated its license to use the PATHS® Mark (Dkt. No. 77-3 at 2). PPH states – at least at the time of filing – that if a user clicked on PEW's original domain name, the user was automatically diverted to PEW's new website with its new domain name, www.selworldwide.org, and its new business name, SEL Worldwide, thus connecting PEW to the PATHS® Mark (Dkt. No. 76 ¶ 12). In this court's view, PEW's approach to the website problem does not show an intent to confuse. *See Fairbanks Capital Corp. v. Kenney*, 303 F. Supp. 2d 583, 591 (D. Md. 2003) (in weighing the harms when determining whether to grant a preliminary injunction to plaintiff based on defendant's domain name's alleged trademark infringement, the court found that if the defendant changed its website domain name, "any inconvenience or confusion experienced by users trying to locate [defendant's] website can be minimized by using the old domain name as a temporary automatic redirecting link to the new website and domain name."); *see also Hasbro, Inc.*, 66 F. Supp. 2d at 125 ("[A]n initial confusion on the part of web browsers . . . is not cognizable under

trademark law.") (alteration in original) (quoting *Teletech Customer Care Mgmt. (Cal.), Inc. v. Tele–Tech Co.,* 977 F. Supp. 1407, 1414 (C.D. Cal. 1997)).

Because there is no allegation or evidence that PEW provided information about its training services or sold its services on its new website that could be accessed by using its former domain name that contained the word "paths" and no allegation that PEW made an unauthorized use of the PATHS® Mark on its new website, the cases upon which PPH relies to contend that PEW's use of its former domain name constituted trademark infringement are distinguishable (Dkt. No. 86 at 5). *Compare PACCAR, Inc. v. TeleScan Techs., LLC,* 319 F.3d 243, 255 (6th Cir. 2003), *abrogated in part by KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.,* 543 U.S. 111 (2004) (defendant infringed on the truck manufacturer-plaintiff's trademarks by using the plaintiff's trademarked truck names in its domain names for websites that consumers used to locate used trucks for sale); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1055-57 (9th Cir. 1999) (where plaintiff's and defendant's websites contained searchable databases of films, defendant, a video rental store chain that used the domain name "moviebuff.com," infringed on plaintiff's "MovieBuff" mark). PPH's reliance on *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808 (7th Cir. 2002), is similarly misplaced. That case addressed defendant's use of a word similar to the plaintiff's trademark in its metatags, which are computer codes that are invisible to the website visitor and are used to direct search engine users to a website. *See id.* at 812; *see also* 6 LOUIS ALTMAN & MALLA POLLOCK, CALLMAN ON UNFAIR COMPETITION, TRADEMARKS & MONOPOLIES § 22.42 (4th ed. June 2021 update). The court found that "[c]onsumers who are directed to [defendant's] webpage [due to the infringing metatags] are likely to learn more about [defendant] and its products before beginning a new search for [the trademark holder]." *Promatek Indus., Ltd.,* 300 F.3d at 813. In contrast, here,

putting aside the lack of evidence concerning PEW's use of metatags, PPH failed to allege or demonstrate that PEW's original domain name website contains information about its business or the services it provides. Consequently, PHH has failed to demonstrate that PEW's current use of its former domain name causes confusion or infringes on PPH's PATHS® Mark.

        3.    PEW's use of "PATHS® Education Worldwide" in a grant application

Finally, PPH alleges that PEW's use of "PATHS® Education Worldwide" in a grant application is submitted in association with the University of Virginia created consumer confusion and shows PEW's intent to infringe PPH's trademark. The statements about which PPH complains were made before PEW's license to use the PATHS® Mark expired on April 30, 2019.

In June 2018, Dorothy Morelli, the CEO of PEW, partnered with the University of Virginia to apply for federal funds to determine "whether a well-tested social and emotional learning program (SEL) called the PATHS curriculum is more effective when teachers receive the . . . (CARE) professional development program, shown to improve teachers' SEL skills, classroom interactions and student engagement" (Dkt. No 76-5 at 4; Dkt. No. 79-2 ¶¶ 17, 21). Because "PPH itself competes in the area of training," it complains about an undated letter from Morelli to Patricia Jennings, Ph.D., Professor of Education at the University of Virginia, in which Morelli describes PEW's role as "the training organization for the PATHS curriculum" (Dkt. No. 75 at 10; Dkt. No. 76 ¶ 13). However, Morelli attests that the grant application information was provided in June 2018, well before the license termination date of April 30, 2019 and well before PEW had been notified the license would be terminated (Dkt. No. 79-2 ¶ 21). The closing date that appears to be the face page of the grant application, "April 02, 2019," is about a month before PEW's license expired (Dkt. No. 76-5 at 2). PPH also complains about

Morelli's reference to PEW's "certified PATHS trainers" in a March 22, 2019 letter and elsewhere in the grant application (Dkt. No. 75 at 10-11; Dkt. No. 76-5 at 6, 11, 12, 14, 15, 18). Notwithstanding PPH's contention that "PEW was advised in [sic] March 8, 2019 that its trademark license would terminate [on] April 30, 2019," there is no evidence that the documents referring to PEW's role as "the" PATHS® trainer or its "certified PATHS trainers" were submitted after the termination date. Because PEW still had a license to use the PATHS® Mark when it authored the documents about which PPH complains, in the court's view, the grant application fails to show a likelihood of consumer confusion or intent to deceive. *Compare Curves Int'l, Inc. v. Fox*, Civil Action No. 12-12250-RGS, 2013 WL 1946826, at *2 (D. Mass. May 9, 2013) (defendant's "continued use of this trademark beyond the expiration of her license is without doubt likely to sow consumer confusion."); *Alcoa Inc. v. Benso Corp.*, CASE NO. 06-1733 (ADC), 2008 WL 11495196, at *7 (D.P.R. Mar. 6, 2008) ("injunctions are available to preclude continued use of a trademark beyond the expiration of a license agreement") (citing *Smith v. Dental Prods. Co.*, 140 F.2d 140, 148 (7th Cir. 1944)).

In summary, the undersigned finds that PPH has failed to sustain its burden of showing that it is likely to succeed in showing consumer confusion or PEW's intent to cause confusion, which are elements of its trademark infringement claim.

  B. <u>PPH has Not Shown that it is Likely to Suffer Irreparable Harm if the Preliminary Injunction is Not Granted.</u>

Even if PPH had demonstrated that it is likely to succeed on the merits of its trademark infringement claim, which it has not, its delay in seeking a preliminary injunction mitigates against a finding that it will suffer irreparable harm if the preliminary injunction is not granted.

If irreparable harm is presumed from a finding that a plaintiff will succeed on the merits of its claim, *see Voice of the Arab World, Inc.,* 645 F.3d at 32-33, "[a]n exception exists when

plaintiffs are aware (or have reason to be aware) of the infringement, and do not bring suit; traditionally, plaintiffs' [unreasonable] delay in filing suit rebuts the presumption of irreparable harm to them, making preliminary injunctive relief inappropriate." *Fritz v. Arthur D. Little, Inc.*, 944 F. Supp. 95, 98 (D. Mass. 1996) (citing *Bourne Co. v. Tower Records, Inc.,* 976 F.2d 99, 101 (2d Cir. 1992)). *See Fabrication Enters., Inc. v. Hygenic Corp.,* 64 F.3d 53, 62 (2d Cir. 1995) ("unwarranted delay in seeking a preliminary injunction in trademark cases undercuts the movant's claim of irreparable injury."); *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 267 (6th Cir. 1988) ("It has been held that an unreasonable delay between the time when a plaintiff is first apprised of the infringing acts and the time of filing suit will rebut the presumption of irreparable harm."). "The longer the delay, the more pervasive the doubt." *Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 163 (1st Cir. 2004). "Absent something that indicates a need for *immediate* relief, a plaintiff's request for a preliminary injunction ordinarily ought to be rejected." *Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004).

     PPH had notice of PEW's alleged infringement at least a year before it sought a preliminary injunction. During the month between April 30, 2019, when PEW's license to use the PATHS® Mark expired, and May 30, 2019, when CBC's assets were transferred to the Mackeys, CBC's attorney, who also represents PPH, expressed concerns to PEW's attorney about PEW's infringement of the PATHS® Mark (Dkt. No. 77-2 at 2-3; Dkt. No. 77-3 at 2). In response, PEW's attorney outlined the steps PEW had taken to correct any unauthorized use of the PATHS® Mark (Dkt. No. 77-3 at 2). The events that PPH contends warrant injunctive relief occurred some time ago. During 2019, after Anna-Lisa Mackey purchased PPH, she attended educational conferences at which she advertised PPH as a vendor and trainer for the PATHS® curriculum (Dkt. No. 76 ¶ 6). Attendees allegedly asked Anna-Lisa why Morelli, who was

known to them as "Dorothy from PATHS®," was not with her (Dkt. No. 76 ¶ 6). In September 2019, PPH received the purchase order from the Seneca Nation, which was addressed to PEW (Dkt. No. 76-1 at 2). In May 2020, PPH received the purchase order from Anderson, which was addressed to PEW, and Glen Mackey sent an e-mail to Dr. Jennings at the University of Virginia explaining that PPH was the "exclusive" distributor of PATHS® curriculum materials (Dkt. No. 76-2 at 2, 3; Dkt. No. 76-3 at 2). Without an adequate explanation, PPH delayed seeking preliminary injunctive relief (Dkt. No. 74).[5] PPH filed the motion to enjoin PEW from using its Mark more than one year after its attorney warned PEW about infringement and about a year after PPH received the Seneca Nation purchase order that it claims shows potential consumer confusion. *See Tough Traveler Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (delay of at least nine months before commencing action, then another four months before moving for preliminary injunction, eliminated the presumption of irreparable harm); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("'Although plaintiff contends that it will be irreparably harmed should defendants' activities not be enjoined, it has waited nearly a year before seeking any relief. Delay of this nature undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'") (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F. Supp. 602, 609 (S.D.N.Y. 1979) (footnote omitted)); *199 Delaware Ave., Inc. v. Lake Effect Artisan Ice Cream*, 1:19-CV-00224 EAW, 2019 WL 1723588, at *6 (W.D.N.Y. Apr. 18, 2019) (the three month delay between the conclusion of the investigation and request for a preliminary injunction made issuance of a preliminary injunction unwarranted); *eAcceleration Corp. v. Trend Micro, Inc.,* 408 F. Supp. 2d

---

[5] Although PPH points that it was not served as a third-party defendant until June 2020, it does not offer a convincing explanation for its failure to file suit against PEW for trademark infringement and request a preliminary injunction prior to that date (Dkt. No. 86 at 6).

1110, 1122 (W.D. Wash. 2006) ("[Plaintiff's] decision to delay approximately one year before bringing th[e] motion [for a preliminary injunction] contradicts its suggestion that it is suffering urgent, continuing, and irreparable harm."). PPH's delay in seeking a preliminary injunction substantially undermines its assertion that it needs immediate relief.

  C. <u>PPH has Failed to Show That the Injury it Will Allegedly Incur in the Absence of Preliminary Injunction Outweighs the Harm an Injunction Would Inflict on PEW</u>

"'[A]n injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable.'" *Voice of the Arab World, Inc.*, 645 F.3d at 32 (quoting *Weinberger v. Romero–Barceló*, 456 U.S. 305, 312 (1982)). The court must balance "the hardship that will befall the nonmovant if the injunction issues" against "the hardship that will befall the movant if the injunction does not issue." *Mercado–Salinas v. Bart Enters. Int'l, Ltd.*, 671 F.3d 12, 23–24 (1st Cir. 2011) (quoting *Borinquen Biscuit Co. v. M.V. Trading Corp.,* 443 F.3d 112, 115 (1st Cir. 2006)). The movant's likelihood of success on the merits is a significant factor in balancing the parties' respective interests. *See Fritz*, 944 F. Supp. at 97–98 ("The [c]ourt is to consider the potential legitimate harm to the defendants owing to the injunction as balanced against the degree of plaintiff's likelihood of success on the merits.") (citing *Accusoft Corp. v. Palo,* 923 F. Supp. 290, 295 (D. Mass. 1996)).

  PPH alleges that "[t]he 25-plus years of goodwill and associations between the PATHS® Mark and the published [sic] of the curriculum by that name, and the substantial funds invested in the Mark, have been and will continue to be eroded by PEW's provision of related services under the Mark" (Dkt. No. 75 at 12). However, taking into account PHH's weak showing on consumer confusion and intent to confuse, PPH has not adequately shown that it is likely to

17

suffer irreparable harm absent preliminary injunctive relief. While PEW is no longer entitled to use the PATHS® Mark, it is not barred from providing training on the program material originally developed by Drs. Greenberg and Kusche. On balance, PEW is more likely to be harmed if it is enjoined from using its old domain name to link potential customers to its new website. *See Bear Republic Brewing Co. v. Cent. City Brewing Co.*, 716 F. Supp. 2d 134, 152 (D. Mass. 2010) ("Having concluded that actual confusion has not occurred to the extent it is relevant in a likelihood of confusion analysis, the sale of [defendant's product] has not been shown to threaten [plaintiff's] reputation and goodwill. If a preliminary injunction were to issue, [defendant] would be precluded from marketing its product in the United States, resulting in significant actual economic harm."). In my view, consideration of the equities tends to weigh in favor of PEW and against granting PPH's request for a preliminary injunction.

    D.    <u>The Public's Interest Does Not Favor Granting PPH's Request For a Preliminary Injunction.</u>

Because PPH has not demonstrated the likelihood of consumer confusion, it has failed to show that the weight of public interest favors granting the injunction. *See Boustany v. Boston Dental Grp., Inc.*, 42 F. Supp. 2d 100, 113 (D. Mass. 1999). Consequently, I find that this factor also weighs against PPH.

    VI.    CONCLUSION

For the reasons stated above, the court recommends that PPH's motion for a preliminary injunction (Dkt. No. 74) be DENIED.[6]

---

[6] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of service of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate

It is so ordered.

Dated: July 12, 2021                                    /s/ Katherine A. Robertson
                                                        KATHERINE A. ROBERTSON
                                                        U.S. MAGISTRATE JUDGE

---

review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.