UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHANNING BETE COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARK T. GREENBERG and PATHS | ) |
| EDUCATION WORLDWIDE, LLC | ) |
| | ) |
| Defendants. | ) |
| | ) |
| MARK T. GREENBERG and PATHS | )   Case No. 3:19-cv-30032-MGM |
| EDUCATION WORLDWIDE, LLC, | ) |
| | ) |
| Defendants and Third-Party Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| PATHS PROGRAM HOLDING, LLC (AZ), | ) |
| PATHS PROGRAM, LLC (AZ), | ) |
| LEARNINGSEL, LLC (AZ), | ) |
| PATHS PROGRAM HOLDING, LLC (MA), | ) |
| and LEARNINGSEL, LLC (NJ), | ) |
| | ) |
| Third-Party Defendants. | ) |

MEMORANDUM AND ORDER REGARDING THIRD-PARTY PLAINTIFF MARK T.
GREENBERG'S MOTION FOR LEAVE TO FILE A SECOND AMENDED
THIRD-PARTY COMPLAINT
(Dkt. No. 127)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

Third-party plaintiff Mark T. Greenberg, Ph.D. ("Dr. Greenberg") developed and

copyrighted the PATHS curriculum for the social and emotional development of children.  Dr.

Greenberg granted the Channing Bete Co., Inc. n/k/a CBC Wind-up, Inc. (hereinafter, "CBC")

eight exclusive licenses to publish and distribute various iterations of the PATHS curriculum

("PATHS Licenses").  In his first amended complaint ("FAC"), Dr. Greenberg brought suit

against third-party defendants PATHS Program Holding, LLC (AZ), PATHS Program, LLC (AZ), LearningSEL, LLC (AZ), PATHS Program Holding, LLC (MA), and LearningSEL, LLC (NJ) (collectively, "PPH") alleging copyright infringement based on CBC's transfer of the PATHS Licenses to PPH without his consent.  Dr. Greenberg now moves to amend the FAC following settlement with CBC that resolved the legality of its transfers of the PATHS Licenses to PPH (Dkt. No. 127).  The case is referred to the undersigned for pretrial management (Dkt. No. 111).  For the reasons that follow, Dr. Greenberg's motion is ALLOWED in its entirety.

II.   BACKGROUND

A.   Facts Alleged in the Proposed Second Amended Complaint[1]

Dr. Greenberg is a developmental psychologist who is a renowned expert on the social and emotional development of children (Dkt. No. 127-1 ¶¶ 52-61).  According to the proposed second amended complaint ("PSAC"), Dr. Greenberg is the joint author and owner of approximately thirty-two PATHS curriculum copyrighted works (hereinafter, "PATHS Curriculum Copyrighted Works") (Dkt. No. 127-1 ¶¶ 19-50, 101).

1.   The Licenses Granted by Dr. Greenberg and Dr. Carol Kusche

Because PPH alleges that amendment of the complaint would be futile, the facts of the Second Amended Complaint are recited in the light most favorable to Dr. Greenberg, the non-moving party.  *See Libby v. Park, Marion & Vernon Sts. Operating Co.,* 278 F. Supp. 3d 501,

---

[1] Unless otherwise noted, the facts are taken from the proposed Second Amended Complaint (Dkt. No. 127-1) and the licenses attached to PPH's opposition to Dr. Greenberg's motion to amend.  The licenses are central to the claims advanced in the PSAC and may be relied on by the court in ruling on Dr. Greenberg's motion (Dkt. No. 134-1 to 134-10).  *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

504-05 (D. Mass. 2017).  In the early 1980s, Drs. Greenberg and Carol Kusche co-authored the original PATHS curriculum (Dkt. No. 127-1 ¶ 62).  On May 14, 1993, Drs. Greenberg and Kusche granted Development Research and Programs, Inc. ("DRP") an exclusive license to publish and distribute the PATHS Curriculum Kit, which included parts of the PATHS curriculum, and a future license to publish and distribute the PATHS curriculum developed by Drs. Greenberg and Kusche for after-school programs and daycare providers ("the PATHS Kit License") (Dkt. No. 127-1 ¶ 64; Dkt. No. 134-1 at 2-4).  In return for the PATHS Kit License, DRP agreed to pay Dr. Greenberg royalties based on "the gross revenue from the sales of the PATHS Curriculum Kit" (Dkt. No. 127-1 ¶ 66; Dkt. No. 134-1 ¶ 3).

DRP merged into CBC on December 31, 2001 (Dkt. No. 127-1 ¶¶ 67, 95).  On November 16, 2004, Drs. Greenberg and Kusche amended the PATHS Kit License by granting CBC the exclusive license to translate the parent components of the PATHS Kit License into Spanish and to publish and distribute the translated material ("PATHS Kit Spanish License") (Dkt. No. 127-1 ¶¶ 68, 106; Dkt. No. 134-2 ¶ 1).  The other terms of the PATHS Kit License were to remain in full force and effect unless CBC provided the components free of charge (Dkt. No. 127-1 ¶ 69; Dkt. No. 134-2 ¶¶ 2, 3).  In that event, CBC would not pay royalties based on gross sales (Dkt. No. 127-1 ¶ 69; Dkt. No. 134-2 ¶ 2).

On April 24, 2006, the second amendment to the PATHS Kit License granted CBC the "co-exclusive (with the Authors) right to grant permission to third parties to translate, publish, and distribute" the PATHS Curriculum in any foreign language ("PATHS Kit Translation License") (Dkt. No. 127-1 ¶¶ 70, 107; Dkt. No. 134-3 ¶ 1).  The PATHS Kit Translation License required the licensee to pay Dr. Greenberg royalties as calculated under the terms of PATHS Kit

License unless CBC charged a third party a flat fee for permission to translate and distribute the curriculum (Dkt. No. 127-1 ¶72; Dkt. No. 134-3 ¶ 2).

On September 21, 2009, Dr. Greenberg, Dr. Kusche, and CBC executed a third amendment to the PATHS Kit License (Dkt. No. 134-4 at 2-5).  The third amendment stated that the PATHS® [Kit] License granted CBC "the exclusive right to publish and distribute any modifications to PATHS®" (Dkt. No. 127-1 ¶ 73; Dkt. No. 134-4 at 2).  By the third amendment, Drs. Greenberg and Kusche granted CBC "a perpetual and worldwide license to use, modify, reproduce and prepare derivative works of the PATHS® curriculum for purposes of creating 'grade level' versions of the PATHS® curriculum" ("Grades 1-3 PATHS License") (Dkt. No. 127-1 ¶¶ 73, 111; Dkt. No. 134-4 ¶ 1).  CBC would pay Dr. Greenberg royalties based on "gross revenue from the sales of the Grades 1-3 PATHS curriculum and materials" (Dkt. No. 127-1 ¶ 74; Dkt. No. 134-4 ¶ 10).  The third amendment further specified that "[e]xcept as specifically modified by this Third Amendment, all terms of the PATHS® [Kit] License and its subsequent amendments including [Dr. Kusche's] and [Dr. Greenberg's] grant of a perpetual license to publish and distribute modified versions of the PATHS® curriculum to [CBC], and their promises not to compete with [CBC], shall remain in full force and effect and shall apply to [the Grades 1-3 PATHS License]" (Dkt. No. 127-1 ¶ 75; Dkt. No. 134-4 ¶ 16).

The fourth amendment to the PATHS Kit License, which was executed on November 8, 2010, granted CBC "a perpetual and worldwide license to use, modify, reproduce and prepare derivative works of the PATHS® curriculum for purposes of creating" fourth and fifth grade level versions of the PATHS curriculum ("the Grades 4 and 5 PATHS License") (Dkt. No. 127-1 ¶¶ 76, 111; Dkt. No. 134-5 ¶ 1).  The license provided the formula for the payment of royalties to Dr. Greenberg based on "gross revenue from the sales" and contained the same language as the

third amendment concerning the "full force and effect" of the PATHS Kit License (Dkt. No. 127-1 ¶¶ 77, 78; Dkt. No. 134-5 ¶¶ 11, 16).

2.    The Licenses Granted by Drs. Greenberg, Kusche, Celene
      Domitrovich, and Rebecca Cortes

Drs. Greenberg, Kusche, Domitrovich, and Cortes collaborated to develop the PATHS curriculum for preschool students (Dkt. No. 127-1 ¶ 79).  On July 1, 2004, they granted CBC "the exclusive license to publish and distribute the PATHS preschool curriculum including but not limited to the PATHS Preschool Curriculum Kit, as shown in Exhibit A or as subsequently modified by Authors, such rights to apply both nationally and internationally in perpetuity" ("PATHS Preschool License") (Dkt. No. 127-1 ¶ 80; Dkt. No. 134-6 at 2).  The license provided for the calculation of royalty payments to Dr. Greenberg based on a percentage of "the gross revenue from sales of the PATHS Preschool Curriculum Kit" (Dkt. No. 127-1 ¶ 82; Dkt. No. 134-6 ¶ 2).

On November 16, 2004, Drs. Greenberg, Kusche, Domitrovich, and Cortes, and CBC amended the PATHS Preschool License to permit CBC to translate into Spanish, publish, and distribute the PATHS Preschool parents' components (the "PATHS Preschool Spanish Translation License") (Dkt. No. 127-1 ¶¶ 83, 108; Dkt. No. 134-7 ¶ 1).  All other terms of the PATHS Preschool License were to remain in full force and effect unless CBC did not charge its customers for the parents' components (Dkt. No. 127-1 ¶ 84; Dkt. No. 134-7 ¶¶ 2, 3).  If that occurred, CBC would not pay royalties (Dkt. No. 127-1 ¶ 84; Dkt. No. 134-7 ¶ 2).

By the second amendment to the PATHS Preschool License, which was executed on April 24, 2006, Drs. Greenberg, Kusche, Domitrovich, and Cortes granted CBC "the co-exclusive (with the Authors) right to grant permission to third parties to translate, publish and distribute the PATHS Preschool curriculum, . . . in any foreign language both nationally and

internationally and in perpetuity" (the "PATHS Preschool Translation License") (Dkt. No. 127-1 ¶¶ 86, 109; Dkt. No. 134-8 ¶ 1).  The other provisions of the PATHS Preschool License were to remain in full force and effect, including the calculation of royalty payments to Dr. Greenberg (Dkt. No. 127-1 ¶¶ 87, 88; Dkt. No. 134-8 ¶¶ 2, 3).

> 3.   CBC's Transfer of the PATHS Licenses to PPH

On May 30, 2019, CBC assigned its rights in the PATHS Licenses to PATHS Program Holding, LLC MA ("PPH MA") (Dkt. No. 127-1 ¶ 92).  The next day, CBC transferred its membership interest in PPH MA to LearningSEL, LLC NJ ("LSEL NJ") (Dkt. No. 127-1 ¶ 93).  Anna-Lisa Mackey was the manager of LSEL NJ (Dkt. No. 127-1 ¶ 6).  According to the records of the Massachusetts Secretary of State, Jonathan Bete and Michael Bete were removed as the managers of PPH MA and Ms. Mackey was appointed as the sole manager (Dkt. No. 127-1 ¶ 96).  PATHS Program LLC AZ ("PP AZ") was formed in June 2019 with an Arizona address and with Ms. Mackey as its member and manager (Dkt. No. 127-1 ¶¶ 3, 94).  On January 1, 2020, PATHS Program Holding LLC ("PPH AZ") and LearningSEL, LLC AZ ("LSEL AZ") were incorporated in Arizona (Dkt. No. 127-1 ¶¶ 97, 98).  Ms. Mackey is listed as the sole manager and member of both entities (Dkt. No. 127-1 ¶¶ 2, 4, 97, 98).  According to the complaint, PPH MA was dissolved in January 2020 (Dkt. No. 127-1 ¶ 99).  The allegations in the PSAC are based on PPH's alleged actions after it acquired the PATHS Licenses to the PATHS Curriculum Copyrighted Works from CBC.

> B.   Relevant Procedural Background

CBC filed suit against Dr. Greenberg and PATHS Education Worldwide ("PEW") on March 7, 2019 (Dkt. No. 1).  CBC's second amended complaint alleged that Dr. Greenberg and PEW had tortiously interfered with CBC's business relations, infringed on CBC's trademark, and

breached non-disclosure confidentiality agreements, that Dr. Greenberg breached a non-compete agreement and violated Mass. Gen. Laws ch. 93A, and that PEW breached its trademark license agreement with CBC (Dkt. Nos. 30). The claims arose from CBC's sale of its PATHS licenses to PPH (Dkt. No. 30). Dr. Greenberg and PEW asserted counterclaims against CBC, including Dr. Greenberg's claims that CBC had no right to assign the PATHS Licenses without his consent (Dkt. Nos. 36, 37).

Dr. Greenberg filed a third-party complaint against PPH on May 13, 2020 and filed the FAC on June 25, 2020 (Dkt. Nos. 39, 59). In his four-count FAC, Dr. Greenberg claimed that PPH was infringing on his copyrights because CBC could not lawfully assign the licenses to his copyrighted works without his consent (Count I). He sought a declaratory judgment that CBC's assignment of the licenses to PPH was invalid and unenforceable and should be rescinded (Count II). In the alternative, Dr. Greenberg claimed breach of contract based upon PPH's allegedly inaccurate calculations of his royalty payments under the license agreements (Count IV). The FAC further claimed a violation of Mass. Gen. Laws ch. 93A, §§ 2, 11 (Count III) (Dkt. No. 59). PPH moved to dismiss the FAC, which motion to dismiss remains pending (Dkt. Nos. 64, 116).

Dr. Greenberg moved to amend the FAC on October 5, 2021, some two months after he, CBC, and PEW stipulated to dismissal with prejudice of CBC's claims and Dr. Greenberg's counterclaims (Dkt. Nos. 124, 125, 127). The PSAC asserts claims for copyright infringement based on allegations that PPH has exceeded the scope of the licenses that CBC transferred (Count I), breach of contract for PPH's alleged failure to pay royalties in the amounts required by the licenses (Count II), and unfair competition, including trademark infringement, in violation of the Lanham Act, 15 U.S.C. §1125(a) (Count III) (Dkt. No. 127-1). PPH opposes Dr. Greenberg's motion.

### III.   LEGAL STANDARDS

Fed. R. Civ. P. Rule 15(a)(2) provides that leave to amend should be freely given when "justice so requires."  A motion for leave to amend a complaint may be denied based on futility, bad faith, undue delay, or a dilatory motive on the movant's part.  *See Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001)).  PPH asserts that Dr. Greenberg's motion should be denied on the grounds of futility and undue delay or bad faith.

"In this context, futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *O'Leary v. N.H. Boring, Inc.*, 323 F.R.D. 122, 126 (D. Mass. 2018) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).  "Thus, when 'reviewing for "futility," the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion.'" *Id.* (quoting *Glassman*, 90 F.3d at 623 (citation omitted)).  "The court accepts as true all well-pleaded facts and gives a plaintiff the benefit of all reasonable inferences . . . ." *Thomas v. Spaulding*, Case No. 1:19-cv-11982-NMG, 2021 WL 3516474, at *2 (D. Mass. Aug. 10, 2021) (citing *Cooperman v. Individual Inc.,* 171 F.3d 43, 46 (1st Cir. 1999)).  The court must distinguish between factual allegations, which generally must be accepted as true, and legal conclusions, which need not be credited.  *See id.* (citing *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013)).  Then "the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

### IV.   ANALYSIS

#### A.   <u>Futility</u>

##### 1.   Count I:  Copyright Infringement

> a.   *The PSAC adequately alleges that PPH's purported modification of the PATHS Curriculum Copyrighted Works' content exceeded the scope of the PATHS Licenses.*

"Under the Copyright Act, '[c]opyright . . . vests initially in the author or authors of the work.'" *Perea v. Editorial Cultural, Inc.*, 13 F.4th 43, 52 (1st Cir. 2021) (alterations in original) (quoting 17 U.S.C. § 201(a)).  "'The Act confers on a copyright owner certain exclusive rights, including the rights to reproduce and distribute the work and to develop and market derivative works.'"[2] *Id.* (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 (2014) (citing 17 U.S.C. § 106)).  *See Sarvis v. Polyvore, Inc.,* CIVIL ACTION NO. 12-12233-LTS, 2015 WL 5934759, at *10 (D. Mass. Aug. 24, 2015), *rec. dec. adopted,* 1:12-CV-12233, 2015 WL 6182226 (D. Mass. Sept. 14, 2015).  "The legal owner of these exclusive rights may transfer ownership of any one or more of the rights through the use of an exclusive license." *Cohen v. United States,* 98 Fed. Cl. 156, 162 (2011) (citing 17 U.S.C. § 101).  As the initial legal owner of the copyright, "the author retains any of the exclusive rights that [he] does not transfer, as well as the right to sue for infringements of such rights." *Id.* (citing 17 U.S.C. § 201(a)).  *See Perea,* 13 F.4th at 52 (quoting 17 U.S.C. § 501(b)).  According to the PSAC, PPH has created derivative works that infringed Dr. Greenberg's copyrights by exceeding the scope of the rights granted by the licenses to modify the content of the PATHS Curriculum Copyrighted Works (Dkt. No. 127-1 ¶¶ 18, 62-89, 102-133, 182-186).  PPH contends that the PATHS Licenses granted the licensee a perpetual license to modify the curriculum and, consequently, any modifications it made did not exceed the scope of the PATHS Licenses (Dkt. No. 134 at 10-12).

---

[2] A derivative work is "a work based upon one or more preexisting works, such as a translation . . . abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" 17 U.S.C. § 101.

"A *prima facie* case of copyright infringement requires proof of two elements: (1) ownership of a valid copyright and (2) the copying of constituent elements of the work that are original."  *Montalvo v. LT's Benjamin Records, Inc.*, 56 F. Supp. 3d 121, 129 (D.P.R. 2014). However, "[a] copyright owner who grants a license to his work waives his right to sue the licensee for copyright infringement provided that the licensee's use does not go beyond the scope of the . . . license." *Small Justice LLC v. Xcentric Ventures LLC,* 99 F. Supp. 3d 190, 198 (D. Mass. 2015), *aff'd,* 873 F.3d 313 (1st Cir. 2017) (citing *John G. Danielson, Inc. v. Winchester– Conant Props., Inc.,* 322 F.3d 26, 40 (1st Cir. 2003)).  *See Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56, 59 (1st Cir. 2020) ("a licensee who violates a condition of a license (and thus exceeds the license's scope) cannot claim the license as a defense to copyright infringement . . . .").

"A license grant typically contains two elements relevant to scope:  (1) a description of to what information, rights, or resources the license pertains, and (2) a description of agreed uses and contractual limitations on use."  RAYMOND T. NIMMER, LAW OF COMPUTER TECHNOLOGY § 7.44 (Dec. 2021).  The interpretation of a license is governed by principles of state contract law.  *See Sarvis,* 2015 WL 5934759, at *11 ("Principles of state contract law apply to the construction of an assignment that purportedly transfers an exclusive right of the copyright owner where, as here, there is no conflict with federal policy."); 3 MELVILLE NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.08[A] (2021) ("NIMMER ON COPYRIGHT") ("principles of contract law generally apply to construction of copyright assignments, licenses, and other transfers of rights.").  Although the parties do not address which state law applies to the construction of the licenses, the Grades 1-3 PATHS License, the Grades 4 and 5 PATHS License, and the PATHS Preschool License state that the licenses "shall be governed by and

10

construed in accordance with the laws of the Commonwealth of Massachusetts," and no party has contended that any law other than that of Massachusetts applies to interpretation of the licenses (Dkt. No. 134-4 ¶ 15; Dkt. No. 134-5 ¶ 15; Dkt. No. 134-6 ¶ 13).

Under Massachusetts law, "[a] court interpreting a contract must first assess whether the contract is ambiguous," which is a question of law. *Farmer's Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, 783 (1st Cir. 2011). "To answer the ambiguity question, [the court] examine[s] 'the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or intention of the parties.'" *Barclays Bank PLC v. Poynter*, 710 F.3d 16, 21 (1st Cir. 2013) (quoting *Bank v. Thermo Elemental Inc.,* 888 N.E.2d 897, 907 (Mass. 2008)). "Language is only ambiguous 'if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.'" *Id.* (quoting *Lass v. Bank of Am., N.A.,* 695 F.3d 129, 134 (1st Cir. 2012) (internal quotation marks omitted)). "Ambiguity, however, is not created just because the parties disagree about the contract's meaning." *Id.* (citing *Farmers Ins. Exch.,* 632 F.3d at 783). If the court determines that the contract is free from ambiguity, all words are construed according to "their usual and ordinary sense" and "must be considered in the context of the entire contract rather than in isolation." *Gen. Convention on New Jerusalem in the U.S., Inc. v. MacKenzie,* 874 N.E.2d 1084, 1087 (Mass. 2007). *See Barclays Bank PLC,* 710 F.3d at 21.

Here, there is no ambiguity in the language that describes the scope of the PATHS Licenses: Dr. Greenberg expressly limited the ways in which the PATHS Curriculum Copyrighted Works could be modified. *See Jacobsen v. Katzer,* 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("A copyright holder can grant the right to make certain modifications, yet retain his right to prevent other modifications."). The PATHS Kit License and the PATHS Preschool License,

11

which were the master licenses that formed the basis for the subsequent amendments, granted PPH, as the subsequent licensee, "the exclusive license to publish and distribute" the PATHS curriculum and the PATHS Preschool curriculum "including but not limited to [the Kit], as shown on Exhibit A or as subsequently modified *by [the][a]uthors,* such rights to apply both nationally and internationally in perpetuity" (Dkt. No. 134-1 ¶ 1; Dkt. No. 134-6 ¶ 1) (emphasis added).  Although the PATHS Kit Spanish Translation License and the PATHS Kit Translation License, which amended the PATHS Kit License, and the PATHS Preschool Spanish Translation License and the PATHS Preschool Translation License, which amended the PATHS Preschool License, granted the licensee the right to create derivative works, that right was limited to translating the PATHS Kit curriculum and the PATHS Preschool curriculum (Dkt. No. 132-2 ¶ 1; Dkt. No. 134-3 ¶ 1; Dkt. No. 134-7 ¶ 1; Dkt. No. 134-8 ¶ 1).  The Grades 1-3 PATHS License and the Grades 4 and 5 PATHS License granted the licensee the exclusive right to publish and distribute any modifications of the PATHS curriculum but limited the licensee's modifications to "creating 'grade level' versions of the PATHS® curriculum" (Dkt. No. 134-4 at 2 and ¶ 1; Dkt. No. 134-5 at 2 and ¶ 1).  In addition, those licenses permitted the licensee to "edit, re-write, design, illustrate and make other modifications to the manuscripts provided by [Drs. Greenberg and Kusche] in order to make [Grade Level] PATHS commercially saleable" on the condition that Drs. Greenberg and Kusche had input concerning the modifications (Dkt. No. 134-4 ¶ 7; Dkt. No. 134-5 ¶ 8).

PPH does not argue that the license terms are ambiguous but points to the words "perpetual" and "components" to support a claimed right to create derivative works (Dkt. No. 134 at 11-12).  Those terms, however, cannot be viewed in isolation.  *See Gen. Convention on New Jerusalem in the U.S., Inc.,* 874 N.E.2d at 1087.  When those words are viewed in the

context in which they are used in the PATHS Licenses, as they must be, they may not be sufficient to establish the rights PPH claims.  Thus, the PSAC sufficiently alleges that PPH has exceeded the scope of the PATHS Licenses by modifying the content of the PATHS Curriculum Copyrighted Works.

       *b.*      *The PSAC plausibly alleges that PPH has exceeded the scope of the PATHS licenses by converting the PATHS Curriculum Copyrighted Works to a digital format for Internet publication and distribution.*

Dr. Greenberg further alleges that PPH has exceeded the scope of the PATHS Licenses by converting the PATHS Curriculum Copyrighted Works into a digital format, distributing "portions" of the digital versions via the Internet, sometimes for free, and offering on-line subscriptions to the digital versions (Dkt. No. 127-1 ¶¶ 120-129).  A digital format is a "new use" of copyrighted materials.  *See Random House, Inc. v. Rosetta Books LLC,* 150 F. Supp. 2d 613, 622 (S.D.N.Y. 2001), *aff'd,* 283 F.3d 490 (2d Cir. 2002) (per curiam) ("the 'new use' – electronic digital signals sent over the internet – is a separate medium from the original use – printed words on paper").  PPH correctly points out that the PATHS Licenses are silent as to specific formats or mediums for publication and distribution of the PATHS Curriculum Copyrighted Works (Dkt. No. 134 at 12).  "Such absence of specific intent typifies cases which address 'new uses' of licensed materials, *i.e.,* novel technological developments which generate unforeseen applications of a previously licensed work."  *Rey v. Lafferty*, 990 F.2d 1379, 1387 (1st Cir. 1993).  It may reasonably be inferred that the parties did not contemplate publication and distribution over the Internet when they signed the PATHS Kit License in 1993 because the use of the Internet was in its early stages.  *See id.*; 3 NIMMER ON COPYRIGHT § 1010[B] ("more likely, there simply was no intent at all at the time of execution with respect to this issue insofar as it relates to whether the grant includes a new use developed at a later time.").

In *Rey*, the First Circuit Court of Appeals provided guidance on the interpretation of license agreements when a court is not able to discern the parties' "mutual general intent" concerning new uses. *Rey*, 990 F.2d at 1387-88. "Under the 'preferred' method [of interpretation], . . . the court will conclude, absent contrary indicia of the parties' intent, that 'the licensee may properly pursue any uses which may reasonably be said to fall within the medium as described in the license.'" *Id.* at 1388 (citations omitted). The court examines the "situation of the parties" and the "'general tenor'" of the contract to determine whether or not the parties intended to include the new use in the license. *Id.* at 1390 (citation omitted).

Dr. Greenberg reasonably contends that the PATHS Licenses indicate that the parties did not intend to include conversion of the PATHS Curriculum Copyrighted Works into a digital format for distribution over the Internet, but, rather, contemplated that CBC would publish and distribute paper copies of the PATHS curriculum. For example, the PATHS Preschool License references Exhibit A, which includes "manuals," "storybooks," and "posters" as components of the PATHS Preschool Curriculum Kit, and "copies" of the curriculum (see, e.g., Dkt. No. 134-6 ¶¶ 1, 4, 5; Dkt. No. 134-6 at 5). "[W]here . . . [Dr. Greenberg's] primary business has centered on distribution in physical form . . . some clear indication that digital or online distribution is contemplated may be necessary to support any conclusion that the digital uses are covered by a license grant that does not mention them or, at least, does not use language contemplating all forms of future distribution systems." 2 RAYMOND T. NIMMER, JEFF C. DODD, LORIN BRENNAN, INFORMATION LAW § 11:56 (2021). Where there is no indication that a digital format was contemplated when DRP, CBC, and Dr. Greenberg executed the PATHS Licenses, Dr. Greenberg has plausibly alleged that PPH exceeded the scope of the licenses by converting the PATHS Curriculum Copyrighted Works to a digital format. *See Random House,* 283 F.3d at

491-92 (denying request for preliminary injunction and finding that an exclusive license to

"publish, print, and sell . . . copyrighted works 'in book form'" did not include the right to publish

the books in digital or electronic format for distribution over the internet); *Rey,* 990 F.2d at 1390

(a grant of rights to produce film episodes "'for television viewing'" did not include sufficient

"reliable indicia" of the parties' mutual intent to include distribution on videocassette, which

constituted a new use); *Bryant v. Europadisk, Ltd.,* No. 07 Civ 3050(WGY), 2009 WL 1059777,

at *5 (S.D.N.Y. Apr. 15, 2009) (because the agreements contemplated only physical copies of

music albums, the authorization of digital downloads of the music constituted copyright

infringement); 2 NIMMER, ET AL., *supra.* § 11:57 ("If a grant is not broadly encompassing of all

new uses, digital transformation of a work will not fall within a license granting rights in paper

or similar traditional media because the context and capabilities of the digital format are far

removed from those associated with ordinary paper.").[3]

In summary, by alleging that PPH's modifications of the PATHS Curriculum

Copyrighted Works, including conversion to a digital format, exceeded the scope of the PATHS

Licenses, the PSAC states a plausible claim for copyright infringement.

2.      Count II:  Breach of Contract

Dr. Greenberg alleges that PPH acted in breach of the PATHS licenses by failing to pay

him royalties as required by the licenses.  For its part, PPH argues that allegations "based on

information and belief," lack "sufficient factual matter . . . to 'state a claim to relief that is

---

[3] To support its position that the PATHS Licenses permitted conversion to a digital format, PPH
points to language in the license agreements between Dr. Greenberg, as the licensee, and five
authors who were known as the Conduct Problems Prevention Research Group (CPPRG),
concerning the use of CPPRG's "text, graphics, designs and other contributions" in the Grades 1-
3 and Grades 4 and 5 PATHS curriculum materials (Dkt. No. 134-9; Dkt. No. 134-10).  The
CPPRG licenses are not part of the record now before the court.  *See Beddall*, 137 F.3d at 17.

plausible on its face'" (Dkt. No. 134 at 12-14). *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

"To state a breach of contract claim, 'plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach.'" *Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship,* 347 F. Supp. 3d 61, 65 (D. Mass. 2018) (quoting *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007)). There is no dispute that the licenses are valid binding contracts. Dr. Greenberg asserts that, since the third quarter of 2019, PPH has violated those contracts by failing to pay him royalties in an amount equal to a percentage of the "gross revenue from sales" of the PATHS products (Dkt. No. 127-1 ¶¶ 197-204; Dkt. No. 134-1 ¶¶ 3, 4; Dkt. No. 134-2 ¶ 2; Dkt. No. 134-3 ¶ 2; Dkt. No. 134-4 ¶ 10; Dkt. No. 134-5 ¶ 11; Dkt. No. 134-6 ¶¶ 2, 3; Dkt. No. 134-7 ¶ 2; Dkt. No. 134-8 ¶ 2). According to the PSAC, "[o]n information and belief," PPH deducted expenses, including "third party collections" and litigation costs, from the gross sales revenue before calculating Dr. Greenberg's share (Dkt. No. 127-1 ¶¶ 169-172).

The PSAC adequately pleads a breach of contract notwithstanding that some allegations are made on information and belief. "'The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged "upon information and belief" (1) where the facts are peculiarly within the possession and control of the defendant, or (2) where the belief is based on factual information that makes the inference of culpability plausible.'" *Lexington Ins. Co.,* 347 F. Supp. 3d at 64 n.1 (alteration in original) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). "'Information and belief' does not mean pure speculation." *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012). "'[S]ome latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where, as here, 'some of the

16

information needed may be in control of [the] defendants.'" *Id.* at 45 (second alteration original) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).  Because the information concerning PPH's calculation of Dr. Greenberg's royalty payments is in PPH's possession and control, Dr. Greenberg's allegations on information and belief state a viable breach of contract claim.  *See Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir. 2011) ("an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim.").

        3.      Count III:  Trademark Infringement Under 15 U.S.C. § 1125(a)(1)

Dr. Greenberg contends that PPH is infringing the trademark in his name, "Mark T. Greenberg" ("Greenberg Trademark") by using the PATHS Curriculum Copyrighted Works and the Greenberg Trademark "to advertise, promote, and sell [PPH's] Emozi Program" and that the trademark misuse has "caused confusion among consumers regarding the source of authorship of the Emozi Program" thereby harming Dr. Greenberg's goodwill and reputation (Dkt. No. 127-1 ¶¶ 222-224).  PPH argues that the PSAC's allegations concerning the existence of the Greenberg Trademark and the alleged consumer confusion are insufficient to state a claim (Dkt. No. 134 at 14-19).[4]  The court disagrees.

Dr. Greenberg's claim is based on § 43(a) of the Lanham Act, which covers unregistered trademarks.  Section 43(a) establishes civil liability for a person who

> (1) . . . in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

---

[4] PPH's contention that Dr. Greenberg waived his right to sue for trademark infringement is premised on a misinterpretation of the language in the PATHS Kit License and the PATHS Preschool License in which Dr. Greenberg guaranteed that the PATHS Curriculum Copyrighted Works, which were the subject of the licenses, did not "infringe any copyright [or] violate any personal or property rights . . . ." (Dkt. No. 134 at 14 n.2; Dkt. No. 134-1 ¶ 12; Dkt. No. 134-6 ¶ 11).

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> affiliation, connection, or association of such person with another person, or as to
> the origin, sponsorship, or approval of his or her goods, services, or commercial
> activities by another person . . . .

15 U.S.C. § 1125(a)(1)(A).  To prevail on an infringement claim for an unregistered trademark

under the Lanham Act, "a plaintiff must establish (1) that its mark is entitled to trademark

protection, and (2) that the allegedly infringing use is likely to cause consumer confusion."

*Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008).

> a.   *The PSAC adequately alleges that Dr. Greenberg's name is entitled to*
> *trademark protection.*

"Personal names are included in the class of common words that may . . . secure

protected trademark status [only if] secondary meaning has attached."  *Flynn v. AK Peters, Ltd.*,

377 F.3d 13, 20 (1st Cir. 2004).  *See Donoghue v. IBC/USA (Publ'ns), Inc.,* 886 F. Supp. 947,

952 (D. Mass.), *aff'd,* 70 F.3d 206 (1st Cir. 1995) ("'[S]urnames, when used as trademarks, are

inherently indistinctive, i.e., weak [and] are permitted trademark protection only upon a showing

that they have become strong marks by acquiring distinctiveness through secondary meaning.'")

(first alteration in original) (citation omitted); 2 J. THOMAS MCCARTHY, MCCARTHY ON

TRADEMARKS AND UNFAIR COMPETITION § 13:2 (5th ed. 2021) (same).  "Secondary meaning

'refers to a word's . . . ability to tell the public that the word . . . serves a special trademark

function, namely, that it denotes a product or service that comes from a particular source.'"

*Donoghue,* 886 F. Supp. at 952 (quoting *Boston Beer Co. v. Slesar Bros. Brewing Co.,* 9 F.3d

175, 181 (1st Cir. 1993)).  Dr. Greenberg has adequately alleged that his name has acquired

secondary meaning within the class of consumers who purchase educational services related to

the social and emotional development of children.  *See Boston Granite Exch., Inc. v. Greater*

*Boston Granite, LLC,* Civil Action No. 11-cv-11898-JLT, 2012 WL 3776449, at *3 (D. Mass.

Aug. 29, 2012) ("secondary meaning can be determined by considering a 'particular trade or

"branch of the purchasing public.'"") (quoting *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27,

42 (1st Cir. 1998)).

     "'Proof of secondary meaning entails vigorous evidentiary requirements.'" *Boston Beer*

*Co.,* 9 F.3d at 181 (quoting *Perini Corp. v. Perini Constr.,* 915 F.2d 121, 125 (4th Cir. 1990)).

"The plaintiff must not only show that it used a personal name as a trademark, but that a

'substantial portion of the consuming public associates [the name] specifically with [his]

business.'" *Flynn,* 377 F.3d at 20 (first alteration in original) (quoting *Boston Beer Co.,* 9 F.3d at

182).  "Furthermore, the plaintiff must show that these consumers base purchasing decisions

upon seeing the trademark (i.e. the personal name) on the product . . . ." *Id.  See Yankee Spirits,*

*Inc. v. Gasbarro,* No. Civ. 96-10967PBS, 1998 WL 428092, at *5 (D. Mass. May 26, 1998)

("The primary element of secondary meaning is a mental association in the buyers' minds

between the alleged mark and a single source of a product.").  The plaintiff can rely on direct

evidence, "such as consumer surveys or testimony from consumers," *Flynn,* 377 F.3d at 20, or

circumstantial evidence concerning:  "(1) the length and manner of the mark's use, (2) the nature

and extent of its advertising and promotion, (3) the efforts made to promote a conscious

connection between the mark and the product's source, (4) the product's established place in the

market, and (5) proof of the defendant's intentional copying of the mark." *Philbrick v. eNom,*

*Inc.*, 593 F. Supp. 2d 352, 369 (D.N.H. 2009) (citing *Yankee Candle Co. v. Bridgewater Candle*

*Co.,* 259 F.3d 25, 43–44 (1st Cir. 2001); *I.P. Lund Trading ApS,* 163 F.3d at 42); *see also 815*

*Tonawanda St. Corp. v. Fay's Drug Co.,* 842 F.2d 643, 648 (2d Cir. 1988) (including among the

factors that may be considered to prove secondary meaning "advertising expenditures, consumer

surveys, media coverage, attempts to copy the mark, and length and exclusivity of use").  "A

19

party need not prove the existence of all these factors in order to demonstrate secondary meaning." *Philbrick,* 593 F. Supp. 2d at 369.  Because "[t]he existence of secondary meaning is an issue of fact . . . , " it is generally not amenable to resolution under Rule 12(b)(6).  *Id.*

Dr. Greenberg has sufficiently pled that his surname has acquired secondary meaning and protected trademark status.  The PSAC alleges that Dr. Greenberg is a developmental psychologist and distinguished professor of psychology who has become a well-known expert on the social and emotional development of children (Dkt. No. 127-1 ¶¶ 52, 53, 55-60).  During the past thirty-eight years and continuing to the present, he has allegedly provided "high quality" "educational services, in the form of teaching, speaking engagements and consulting [services], under his name Mark T. Greenberg . . .  related to the social and emotional well-being of children and their families throughout the United States . . . " (Dkt. No. 127-1 ¶¶ 135, 136, 210, 211, 213).  *See Yankee Spirits, Inc.,* 1998 WL 428092, at *7 ("While no fixed length of time must pass before a mark can achieve secondary meaning, several courts have held that secondary meaning can be established by the long use of a mark or name."); *Donoghue,* 886 F. Supp. at 953 ("The plaintiff has become widely known, due to his efforts during the past twenty-two years, as an expert in mutual and money market funds.").  According to Dr. Greenberg, he has promoted his educational services by writing over 350 journal articles and publications addressing the social and emotional development of children, by founding and participating in organizations that support his field of expertise, and by contributing to the creation of the PATHS Curriculum Copyrighted Works (Dkt. No. 127-1 ¶¶ 57-59, 61, 209, 212).  *See Donoghue,* 886 F. Supp. at 953 ("The plaintiff's name, through numerous publications and determined self-promotion, has become associated in the public mind with expertise in strategic investment advice.").  Because the PSAC alleges sufficient facts to support a claim that the relevant community of consumers

would associate Dr. Greenberg's name with expertise in the social and emotional development of children and with the creation of the PATHS Curriculum Copyrighted Works, Dr. Greenberg has adequately pled that his name is distinctive and is entitled to trademark protection.

PPH's reliance on *Flynn* is unavailing (Dkt. No. 134 at 17). Flynn's Lanham Act claims were rejected on summary judgment. *See Flynn*, 377 F.3d at 15. The court deemed Flynn's curriculum vitae and her affidavit that recited her background in robotics to be "self-serving" and insufficient to establish that "relevant consumers have associated her name with a product." *Id.* at 20-21. Here, in contrast, prior to discovery, the factual allegations in the PSAC are similar to the circumstantial evidence presented in *Donoghue* where the court granted a preliminary injunction based on the finding that the plaintiff's name had acquired trademark status in the field of investment advice. *See id.* at 21-22 (citing *Donoghue,* 886 F. Supp. at 948-49, 953).

      b.    *The PSAC adequately alleges that PPH's use of the Greenberg Trademark is likely to cause consumer confusion.*

Dr. Greenberg argues that "the [P]SAC details how [PPH is] using and trading off the goodwill of the Greenberg Trademark by selling, offering for sale and advertising unrelated training and an unrelated curriculum in a manner that both has and continues to cause [consumer] confusion" (Dkt. No. 127-1 ¶ 149; Dkt. No. 139 at 17). PPH disputes the sufficiency of the allegations of consumer confusion (Dkt. No. 17-18).

"The First Circuit has interpreted 'likely to cause consumer confusion' to mean 'more than the theoretical possibility of confusion.'" *Smartling, Inc. v. Skawa Innovation Ltd.,* 358 F. Supp. 3d 124, 138 (D. Mass. 2019) (quoting *Boston Duck Tours, LP*, 531 F.3d at 12). *See Peoples Fed. Sav. Bank v. People's United Bank,* 672 F.3d 1, 9–10 (1st Cir. 2012) (same). "In other words, allegedly infringing conduct must create 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" *Boston Duck Tours, LP*, 531 F.3d at

12 (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996)).  "Likelihood of confusion is a question of fact," *Dorpan, S.L. v. Hotel Meliá, Inc.,* 728 F.3d 55, 64 (1st Cir. 2013), that is "analyzed using eight non-exclusive factors, sometimes referred to as the *Pignons* factors." *Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental (Oriental II)*, 832 F.3d 15, 25 (1st Cir. 2016).  Courts consider: "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." *Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental (Oriental I)*, 698 F.3d 9, 17 (1st Cir. 2012) (quoting *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 15 (1st Cir. 2004)); *see also Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981).  While a number of these factors require factual development in discovery for adequate evaluation, some provide a reasonable measure for assessing the adequacy of the allegations for purposes of ruling on a motion for leave to amend a complaint.

By detailing Dr. Greenberg's preeminent qualifications and experience in the field, the PSAC alleges the strength of Dr. Greenberg's mark (Dkt. No. 127-1 ¶¶ 135, 136, 208, 209, 210, 212).  According to the PSAC, PPH's website, pathsprogram.com, which "promotes, advertises, and offers for sale" the PATHS Curriculum Copyrighted Works and the wholly "unaffiliated" Emozi Program's curriculum for grades 6 through 8, which was not created, and is not endorsed, by Dr. Greenberg and his associates, is likely to cause consumer confusion (Dkt. No. 127-1 ¶¶

149, 150, 157, 159, 216, 217).[5]  Dr. Greenberg alleges that PPH's website includes a page

entitled "'Proven Academic and Behavioral Outcomes'" and cites "'rigorous clinical studies'" that

have demonstrated the positive impact of the PATHS Curriculum Copyrighted Works on

students' emotional vocabulary, behavior, and scores on cognitive skills tests (Dkt. No. 127-1 ¶¶

154, 155) while, at the same time, the website markets the unrelated Emozi Program, implying

that the proven outcomes and rigorous clinical studies apply to all of the products PPH markets.

        As to the similarity of goods and classes of prospective purchasers, Dr. Greenberg's and

PPH's competing services and products are offered to educators to address children's social and

emotional needs for learning (Dkt. No. 127-1 ¶¶ 53, 144, 215, 218).  The PSAC alleges that

PPH's apparent use of Dr. Greenberg's reputation and goodwill to advertise, promote, and sell the

Emozi Program could cause consumers to mistakenly believe that Dr. Greenberg is the source or

sponsor of that curriculum (Dkt. No. 127-1 ¶¶ 162, 163, 164, 222).  *See Donoghue,* 886 F. Supp.

at 953 ("If the defendants were to use the plaintiff's name in such a way that suggested that the

plaintiff had authorized the connection between the plaintiff's name and certain . . . products,

when such was not in fact the case, there would be a high probability of public confusion."); *see*

*also Boston Granite Exch., Inc.,* 2012 WL 3776449, at *3 ("Trademark protection under the

Lanham Act prevents one business from appropriating the goodwill of other businesses by

---

[5] PPH has appended screenshots showing the format of portions of its website,
pathsprogram.com, in support of its argument (Dkt. Nos. 134-11 to 134-19).  Although the
PSAC refers to the website's inclusion of Dr. Greenberg's biographical information and other
information about the PATHS Curriculum Copyrighted Works and the Emozi Program (Dkt. No.
127-1 ¶ 151-157), the website's content is not "central to plaintiff's claim" or "sufficiently
referred to in the complaint" to be incorporated by reference into the PSAC and is therefore not
part of the record before the court.  *See Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993); *Rivera*
*v. Marriott Int'l, Inc.,* 456 F. Supp. 3d 330, 336-39 (D.P.R. 2020) (declining to take judicial
notice of screenshots of defendant's websites in ruling on a motion to dismiss).

creating and using marks confusingly similar to those used by its competitors.").  According to

Dr. Greenberg, by capitalizing on his trademark to market the unproven Emozi curriculum, PPH

is harming his reputation and that of the PATHS Curriculum Copyrighted Works, resulting in the

loss of sales of the PATHS Curriculum Copyrighted Works and a reduction in royalty payments

(Dkt. No. 127-1 ¶¶ 222, 223).  Although the PSAC does not allege that PPH has intentionally

traded on Dr. Greenberg's name, that is a matter for discovery and, in any event, "courts should

not give great weight to a finding of lack of intent in determining likelihood of confusion

because the presence or absence of intent does not impact the perception of consumers whose

potential confusion is at issue." *Hasbro, Inc. v. Clue Computing, Inc.,* 66 F. Supp. 2d 117, 125

(D. Mass. 1999), *aff'd,* 232 F.3d 1 (1st Cir. 2000) (citing *I.P. Lund Trading ApS,* 163 F.3d at 44).

Dr. Greenberg has pled sufficient facts to state a plausible claim for relief on Count III of the

PSAC.

       B.    <u>Undue Delay or Bad Faith</u>

      Dr. Greenberg did not unduly delay filing his motion for leave to amend (Dkt. No. 134 at

6-9).  The FAC alleged that CBC did not have the right to transfer the licenses to Dr.

Greenberg's copyrighted works to PPH without his consent (Dkt. No. 59).  Dr. Greenberg has

represented that he agreed to the validity of the license transfers in August 2021 after CBC,

PEW, and he settled their dispute on the validity of the license assignments (Dkt. No. 139 at 7).

The court dismissed CBC's claims and Dr. Greenberg's counterclaims on August 9, 2021 (Dkt.

No. 125).  Dr. Greenberg moved to amend the FAC less than two months later (Dkt. No. 127).

In these circumstances, PPH's claim of undue delay is unavailing.  *See Torres-Álamo v. Puerto

Rico,* 502 F.3d 20, 25-26 (1st Cir. 2007) (motion to amend, which was filed less than two months

after defendant filed its answer, was not unduly delayed); *Largesse v. H & M Int'l Transp., Inc.,*

76 F. Supp. 3d 360, 362 (D. Mass. 2015) (no undue delay where plaintiff filed the motion to amend two and one-half months after defendant moved to dismiss).

PPH's bald assertions of "procedural gamesmanship" fall short of demonstrating that Dr. Greenberg acted in bad faith (Dkt. No. 134 at 8-9). *See Sherrod v. McHugh*, 249 F. Supp. 3d 85, 87 (D.D.C. 2017) ("Preventing a party from amending [the] complaint on the basis of bad faith generally requires an affirmative showing by the nonmoving party."); *Cathedral Art Metal Co. v. Giftco, Inc.*, C.A. No. 06-465S, 2010 WL 936219, at *2 (D.R.I. Mar. 12, 2010) ("The . . . [d]efendants have not made a sufficient showing of either undue delay or bad faith which would justify precluding [p]laintiff from amending its [c]omplaint.").

"A district court pondering whether to grant or deny a motion for leave to amend a complaint must consider the totality of the circumstances." *Niktine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (citing *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006)). The FAC challenged the validity of CBC's transfer of the PATHS Licenses to PPH (Dkt. No. 59). There can be no dispute that a majority of the claims Dr. Greenberg asserted against PPH in the FAC became moot in August 2021 when Dr. Greenberg withdrew his opposition to CBC's transfers of the PATHS Licenses to PPH (Dkt. Nos. 124, 125, 134 at 9, 139 at 7). "Where the proposed amendment requires leave of court, the preferred course is to grant leave to amend even if doing so renders moot the [pending] motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave." *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008). Based the changed circumstances, the PSAC does not contest the validity of the transfers to PPH. Where Dr. Greenberg has stated valid reasons for the proposed amendments and they are consistent with the record, PPH has failed to show improper motive or bad faith. *See Gropp v. United Airlines, Inc.*, 847 F. Supp.

941, 946 (M.D. Fla. 1994) ("Plaintiffs have the right to amend in an attempt to present to the [c]ourt their most meritable claims."); *see also* Fed. R. Civ. P. 15(d) (" . . . the court . . . may permit a party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."). *Compare Silverstrand Invs. v. AMAG Pharm.,* 707 F.3d 95, 108 (1st Cir. 2013) (denying plaintiff's motion to amend where it failed to offer an explanation for the request).

Ultimately, "the most significant issues are judicial economy and whether, at this stage of the case, allowing leave to amend would unfairly prejudice [d]efendant." *Cooper v. Charter Commc'ns Entm'ts I, LLC*, Civil No. 3:12-10530-MGM, 2015 WL 1943858, at *5 (D. Mass. Apr. 28, 2015) (citing *Smith v. Mitre Corp.,* 949 F. Supp. 943, 945–946 (D. Mass. 1997)). It would not promote judicial economy or efficiency were Dr. Greenberg required to file a new case to assert the claims in the PSAC. *See EMC Corp. v. Pure Storage, Inc.*, 310 F.R.D. 194, 202-03 (D. Mass. 2015) (considering judicial economy and efficiency as a factor in deciding whether to grant a plaintiff's motion for leave to further amend the operative complaint). As to potential prejudice to PPH, although CBC filed the original case in March 2019, the claims asserted by Dr. Greenberg against PPH are in the earliest stages. The court is informed that, although Dr. Greenberg has done so, PPH has not even served initial disclosures. There has been no discovery and the claims stated in the PSAC are not futile. There is no cognizable prejudice to PPH. *See Traincroft, Inc. v. Ins. Co. of Pa.,* Civil No. 14-10551-FDS, 2014 WL 12796262, at *2 (D. Mass. Sept. 5, 2014) (granting motion to amend where the "case [was] still at its earliest stages. There has been no scheduling conference, and no discovery has been taken."); *4 MVR, LLC v. Warren W. Hill Const. Co.*, Civil Action No. 12-10674-DJC, 2012 WL 3016223, at *3

(D. Mass. July 23, 2012) (granting motion to amend where litigation was in the early stages, no discovery schedule or trial date had been set, and the proposed amendments were not futile).

V.    CONCLUSION

For the foregoing reasons, third-party plaintiff Mark T. Greenberg's Motion for Leave to File a Second Amended Third-party Complaint (Dkt. No. 127) is granted.  Counsel using the CM/ECF system should file the PSAC forthwith, noting in the caption the date on which leave to file was granted.  The Clerk's Office is directed to set a date for a Rule 16 scheduling conference.

It is so ordered.

Dated:  January 5, 2022                                      /s/ Katherine A. Robertson
                                                            KATHERINE A. ROBERTSON
                                                            U.S. MAGISTRATE JUDGE